UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

O.M., by his parent D.M., and
parent D.M.,                                    **DECISION AND ORDER**
                                                **No. 6:14-cv-06487(MAT)**
            Plaintiffs,

      -vs-

BOARD OF EDUCATION OF THE WAYNE
CENTRAL SCHOOL DISTRICT,

            Defendant.
_____

**I.   Introduction**

    D.M. and her child, O.M. (collectively, "Plaintiffs"), instituted this action on August 22, 2014, asserting a cause of action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., against defendant Board of Education of the Wayne Central School District ("Defendant" or "the District"). Plaintiffs purport to challenge the "systemic failure" of the District to provide a free appropriate public education ("FAPE") to O.M. and other unnamed students with disabilities in the District. Presently before the Court is Defendant's motion pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") to dismiss the complaint for lack of subject matter jurisdiction.

**II.  Factual Background and Procedural History**

    O.M. is a student with a disability who, during the 2012-2013, 2013-2014, and 2014-2015 school years, received special educational

services from the District. At the time Plaintiffs filed their complaint, O.M. was 19-years-old and in twelfth grade. O.M. is classified as having "Multiple Disabilities" (autism and Down's Syndrome) and is an "Alternate Assessment" student, although Plaintiffs have not defined what that means. O.M. is a participant in "the S.H.O.W. program",[1] which Plaintiffs state is "primarily non-academic". Complaint ("Compl.") (Dkt #1) ¶ 43. The goals of the S.H.O.W. program include career development, "integrated learning," and "[u]niversal foundation skills in reading, writing, listening, speaking and (functional) math." Id. ¶ 6. Plaintiffs assert that approximately 21 students with disabilities are currently enrolled in the S.H.O.W. program or have attended the program within the past two years. Id. ¶ 25.

With regard to O.M. specifically, Plaintiffs assert that in his individualized educational plan ("IEP") developed for the 2014-2015 school year, the transition goals and services "remained vague and not tailored to his individualized needs, in violation of 8 N.Y.C.R.R. §§ 200.4(2)(viii-ix)." Id. ¶ 46. As an example, O.M.'s most current IEP no longer has any academic component. Id. ¶ 47. Plaintiffs claim that O.M. does not have access to the general curriculum and that as a result of the District's failures, O.M. is not achieving his IEP goals in any areas, including Reading, Writing, Math, and Speech/Language. Id. ¶ 55. Despite this lack of

---

[1] The acronym "S.H.O.W." stands either for "Students Having Opportunities to Work" or "Student Hands On the World." Id. ¶ 3.

progress, Plaintiffs assert, the District made no changes to O.M.'s IEP. Id. ¶ 57.

Plaintiffs further allege that the District has failed to provide a FAPE to unspecified students in the S.H.O.W. program, has "failed to provide transition goals and services to students with disabilities who require such goals and services in order to receive a FAPE"; has failed to provide S.H.O.W program students "access to the NYSAA Frameworks"; and "has denied them access to the general curriculum." Compl. ¶¶ 61-63. The complaint contains other criticisms of the S.H.O.W. program's curriculum, e.g., that students have no access to science laboratories, art rooms equipped with art supplies, music rooms equipped with instruments, auditoriums designed for theater productions, or gymnasiums; and are denied access to "specials", such as photography, regularly offered to other students. Id. ¶¶ 52-53. Plaintiffs also allege that the District has failed to implement the IEPs of students who attend the S.H.O.W. program. Id. ¶ 64. However, Plaintiffs do not identify any other students in the S.H.O.W. program whose IEPs the District allegedly has failed to implement.

Based on these alleged violations of the IDEA due to the District's failure to provide O.M. and "all students similarly situated," Compl., p. 11, with a FAPE, Plaintiffs seek various forms of injunctive, declaratory, and compensatory relief. In particular, Plaintiffs demand that the District be enjoined to develop a "plan designed to remedy the above-mentioned violations,

including the submission of a timetable for correcting these violations," and to "establish and implement policies and procedures, as set forth in the plan, necessary to comply with federal and state law." Compl., p. 12. Plaintiffs seek equitable relief, including the provision of additional educational services or compensatory education to O.M. Plaintiffs also seek compensatory damages in the form of reimbursement for educational expenses incurred by D.M., as well as reasonable attorney's fees, pursuant to 20 U.S.C. §1415(i)(3)(B). Id.

After answering Plaintiffs' complaint on October 2, 2014, the District moved to dismiss the complaint pursuant to Rule 12(b)(1). The District contends that the Court lacks subject matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies prior to commencing this action. Plaintiffs have opposed the motion, and the District filed a reply. The motion was held in abeyance while the parties engaged in mediation efforts, which were unsuccessful. The Court has been notified that resolution of the motion to dismiss would be helpful for purposes of any further settlement discussions.

For the reasons discussed below, Defendant's motion to dismiss for lack of subject matter jurisdiction is granted, and the complaint is dismissed.

## III. General Legal Principles

### A. Rule 12(b)(1) and Subject Matter Jurisdiction

A case properly may be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has "the burden of proving by a preponderance of the evidence that it exists. Makarova, 201 F.3d at 113. When considering a motion to dismiss for lack of subject matter jurisdiction, the court must accept all material factual allegations in the complaint as true, but jurisdiction nevertheless "must be shown affirmatively, and that showing is not made by drawing inferences favorable to the party asserting [jurisdiction]." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). The also court may consider "evidentiary matter . . . presented by affidavit or otherwise." Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986) (citation omitted).

### B. The IDEA and Exhaustion of Administrative Remedies

"Under the IDEA, federal money is available to assist state and local agencies in educating handicapped children, provided that the recipients of those funds comply with various provisions of the Act." Board of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 481 (2d Cir. 2002) (internal quotation marks omitted). The IDEA's primary purpose is "to ensure that all children with

disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and to prepare them for further education employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). The IDEA requires, inter alia, that (1) [FAPE] is available to all disabled children between the ages of 3 and 21 who reside in a participating state; (2) an IEP is developed, reviewed, and revised for each disabled child; and (3) "[t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(1)(A), (4), (5)(A). Each school year, a new IEP is developed jointly for a covered student by his or her educators and parents. The IEP sets forth the child's present performance level, goals and objectives for the school year, specific services needed to meet those goals, and evaluation criteria and procedures to determine whether the goals have been met. See 20 U.S.C. § 1401(a)(20). "The IEP is the central mechanism by which public schools ensure that their disabled students receive a free appropriate public education." Polera v. Board of Educ. of Newburg Enlarged City Sch. Dist., 288 F.3d 478, 482 (2d Cir. 2002).

School districts are required under the IDEA to offer parents of a disabled student various procedural safeguards designed to help ensure their child receives the requisite free and appropriate education. See 20 U.S.C. § 1415(a)). New York State has established a two-tiered process for administratively reviewing IEPs of children covered by the IDEA. See, e.g., Heldman ex rel. v. Sobol, 962 F.2d 148, 152 (2d Cir. 1992); N.Y. Educ. Law § 4404(1)-(2)). A parent who believes that her child's IEP, or the school's implementation of the IEP, does not comply with the IDEA may file a "due process complaint" with the appropriate state agency. See 20 U.S.C. § 1415(b)(6)). Upon receiving such a due process complaint, the school district has a 30-day "resolution period" to address, without penalty, the deficiencies alleged. See 20 U.S.C. § 1415(f)(1)(B). After expiration of the resolution period, the parent may obtain a hearing before an independent hearing officer, and, if dissatisfied, may appeal that decision to a state review officer. See 20 U.S.C. § 1415(f); N.Y. Educ. Law § 4404(2)). It is only after exhaustion of the procedures set forth in Section 1415 of the IDEA that an aggrieved party has the right to file a suit in a federal or state court. See 20 U.S.C. § 1415(i)(2)(A); see also, e.g., Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 204-05 (2d Cir. 2007) ("'It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court. . . .'") (quotation omitted). The Second Circuit has observed that "[t]he

purpose of the exhaustion rule is to 'channel disputes related to the education of disabled children into an administrative process that [can] apply administrators' expertise in the area and promptly resolve grievances.'" Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 245-46 (2d Cir. 2008) (quoting Polera, 288 F.3d at 487; citation omitted).

Under controlling Second Circuit precedent, the "[f]ailure to exhaust the administrative remedies [available under the IDEA] deprives the court of subject matter jurisdiction." Cave, 514 F.3d at 245 (citing Polera, 288 F.3d at 483); see also Hope v. Cortines, 69 F.3d 687, 688 (2d Cir. 1995). In its more recent IDEA decisions, however, the Second Circuit has taken note of several Supreme Court cases "admonish[ing] lower courts to more carefully distinguish between jurisdictional rules and mandatory claims-processing rules, the latter being subject to waiver and forfeiture[.]" Coleman, 503 F.3d at 203 (internal and other citations omitted). To date, the Second Circuit has not reached a clear conclusion as to whether, in light of these newer Supreme Court cases, the failure to exhaust administrative remedies under the IDEA is an affirmative defense, rather than a jurisdictional bar. E.g., id. at 204 (declining to decide the IDEA's exhaustion requirement is a rule affecting subject matter jurisdiction or a claim-processing rule that may be waived or forfeited, because defendants had "consistently challenged the district court's exhaustion ruling throughout this litigation") (citation omitted); Levine v. Greece Cent. Sch. Dist.,

353 F. App'x 461, 463 (2d Cir. 2009) (unpublished opn.) (noting dispute regarding whether exhaustion requirement is "jurisdictional" or "merely an affirmative defense that must be raised by the defendant or else is subject to waiver or forfeiture", but declining to decide the question). The district courts, however, are bound by existing Circuit precedent—namely, Cave and Polera—until that precedent is overruled. E.g., Piazza v. Florida Union Free Sch. Dist., 777 F. Supp.2d 669, 680 n. 7 (S.D.N.Y. 2011) (citing United States v. Emmenegger, 329 F. Supp.2d 416, 436 (S.D.N.Y. 2004) ("[T]his Court is obliged to follow [Second Circuit] precedent until it is overruled by a higher court or until Supreme Court precedent renders it untenable.")); Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 496 F. App'x 131, 134 (2d Cir. 2012) (unpublished opn.) ("The District Court's holding that the plaintiffs' failure to exhaust the IDEA's administrative remedies required dismissal of their complaint [for lack of subject matter jurisdiction] was clearly compelled by our Circuit precedent").

The proper characterization of exhaustion in the IDEA context is of no moment here because Defendant has "in fact asserted the exhaustion requirement as an affirmative defense, and the IDEA makes clear that exhaustion of administrative remedies is an absolute prerequisite to bringing suit under any federal statute for relief available under the IDEA." Baldesarre v. Monroe-Woodbury Cent. Sch. Dist., 820 F. Supp.2d 490 n. 13 (S.D.N.Y. 2011) (citing

Coleman, 503 F.3d at 204 ("[W]e are not forced to decide whether our precedent . . . remains good law . . . because there can be no claim of waiver or forfeiture here."); other citation omitted).

**IV. Discussion**

    **A.    Plaintiffs Have Not Utilized New York's Administrative Review System**

It is undisputed that Plaintiffs failed to utilize New York State's administrative review process to challenge the alleged deficiencies in District's provision of educational services to O.M. Indeed, Plaintiffs do not allege that they ever filed a due process complaint with the District, the first step in the review process.[2] Given that Plaintiffs have not fulfilled a necessary predicate to invoking the State's administrative review process, i.e., the filing of a due process complaint pursuant to Section 1415 of the IDEA, they have not exhausted their administrative remedies.

    **B.    Plaintiffs Have Not Fulfilled Any Exception to the Exhaustion Requirement**

Plaintiffs urge that they are excused from filing a due process complaint and completing the administrative review process because doing so "would have been futile in addressing the systematic deficiencies in Defendant's special education system." Plaintiffs' Memorandum of Law ("Pl's Mem.") at 2. In particular,

---

[2] See also Affidavit of District Director of Student Services Michele Scheik ("Scheik Aff.") (Dkt #10-2) ¶¶ 13, 14 (stating that no due process complaint ever has been filed with the District in regard to O.M., and that Plaintiffs never had made use of the administrative procedures available to them).

Plaintiffs argue, the S.H.O.W. program is "deficient as a whole" because it fails to provide participating students the same educational materials and skills contained in the District's general curriculum. In this way, students with disabilities are unlawfully denied access to the general curriculum or to the same curriculum provided to students without disabilities. See Pls' Mem. at 3-4. The District argues that despite Plaintiffs' "conclusory allegations of 'systemic' IDEA violations", Defendants' Reply ("Reply") at 3, the complaint clearly is focused on the District's failures in regard to one student, O.M., and therefore administrative exhaustion is not excused. Id.

The Second Circuit has summarized the three exceptions to the IDEA's exhaustion requirement as follows: "(1) [I]t would be futile to use the due process procedures [required by the IDEA] . . .; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; [or] (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)." Mrs. W. v. Tirozzi, 832 F.2d 748, 756 (2d Cir. 1987); see also, e.g., Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002). The party seeking relief under the IDEA bears the burden of demonstrating entitlement to one of these exceptions. Polera, 288 F.3d at 488 n. 8 (citing Honig v. Doe, 484 U.S. 305, 327 (1988); other citation omitted).

As an initial matter, the Court notes that both Defendant and Plaintiffs assert that there is a so-called "systemic violations" exception to the exhaustion rule. See, e.g., Plaintiffs' Memorandum of Law ("Pls' Mem.") at 3 (stating that the Second Circuit "has fully embraced the systemic violation exception requirement" for IDEA claims") (citing J.S. v. Attica Cent. Sch. Dist., 386 F.3d 107 (2d Cir. 2004); R.A-G. v. Buffalo City Sch. Dist. Bd. of Educ., No. 12-CV-960S, 2013 WL 3354424, at *8 (W.D.N.Y. July 3, 2013), aff'd, 569 F. App'x 41 (2d Cir. 2014) (unpublished opn.)).[3] While "several courts have recognized that IDEA claims raising 'systemic' or 'structural' allegations may not need to be administratively exhausted." Doe v. Arizona Dep't of Educ., 111 F.3d 678, 681 (9th Cir. 1997) (collecting cases), "[t]he exception for 'systemic' violations 'merely flows implicitly from, or is in fact subsumed by, the futility and no-administrative-relief exceptions. . . .'" Jamie S. v. Milwaukee Bd. of Sch. Dirs., No. 01-C-928, 2012 WL 3600231, at *2 (E.D. Wis. Aug 20, 2012) (quoting Beth v. Carroll, 87 F.3d 80, 88-89 (3d Cir. 1996)). Therefore, the Court interprets Plaintiffs' argument to be that the futility exception applies here because this case involves "systemic violations that could not be

---

[3] Referring to "systemic violations" as an independent exception is somewhat misleading and does not accurately describe the cited cases. J.S. involved an analysis under the futility exception. See J.S., 386 F.3d at 113 (explaining that it "had previously excused exhaustion of administrative remedies in cases that included allegations of systemic violations" because exhaustion "*would be futile*") (emphasis added). R.A-G. was a class action in which the plaintiffs alleged systemic violations of the procedural rights accorded by the IDEA. R.A-G., 2013 WL 3354424, at *8.

remedied by local or state administrative agencies," Cave, 514 F.3d at 249.

In determining whether an exception to the exhaustion requirement applies, courts "should . . . be guided by the policies underlying the exhaustion requirement." Bowen v. City of N.Y., 476 U.S. 467, 484 (1986); see also J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 113 (2d Cir. 2004) ("As we analyze whether plaintiffs have proven that their case should not be subject to the exhaustion requirement [due to systemic violations], we are to consider whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency."). Here, Plaintiffs have not attempted to show that the interests underlying the exhaustion requirement would not be furthered by enforcing the requirement, instead asserting that it is "axiomatic that the administrative hearing process cannot, and will not, address allegations of systemic educational deficiencies." Pl's Mem. at 2. This is insufficient to carry Plaintiffs' burden of demonstrating that the futility exception applies. See, e.g., Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1304 (9th Cir. 1992) ("Structuring a complaint as a challenge to policies, rather than as a challenge to an individualized education program formulated pursuant to these policies, however, does not suffice to establish entitlement to a waiver of the IDEA's exhaustion requirement. Plaintiffs must demonstrate in addition that the underlying purposes of exhaustion would not be furthered

by enforcing the requirement."); Hope v. Cortines, 872 F. Supp. 14, 23 (E.D.N.Y. 1995) (while allegation "arguably state[d] a facial violation of IDEA on the ground that defendants engaged in wide-spread, systemic discrimination", court "'must also weigh the importance of the final interest served by the exhaustion doctrine: affording the agency an opportunity to consider and correct errors'") (quotation omitted). Here, at the very least, exhaustion of administrative remedies would allow those having expertise in the relevant areas to develop a complete factual record and define the issues.

Furthermore, as Defendant argues, the complaint's substantive allegations illustrate that Plaintiffs' claims are focused on the District's alleged failures in regard to O.M. individually as opposed to systemic failures affecting other disabled students in the District. Significantly, the plaintiff D.M. alleges in the complaint that she brings this action "on her own behalf and on behalf of her child for whom she has guardianship[,]" Compl. ¶ 11. D.M. plainly does not bring this action on behalf of any individual student other than her son, O.M.; on behalf of a class of students; or on behalf of any of the "[a]pproximately 21 students with disabilities [who] are currently enrolled in the S.H.O.W. program or have attended the program within the past two years." Id. ¶ 5. Thus, it is distinguishable from the case relied on by Plaintiffs, R.A-G ex rel. R.B., 2013 WL 3354424, in which a disabled child and her parent instituted putative class action "on behalf of a class

Case 6:14-cv-06487-MAT-MWP Document 25 Filed 06/29/15 Page 15 of 17


of others (parents and students) similarly situated" and alleged procedural violations of the IDEA. Id. at *8; see also, e.g., S.W. by J.W. v. Warren, 528 F. Supp.2d 282 (S.D.N.Y. 2007) (excusing exhaustion based on futility due to systemic violations where 6 individual disabled children and their parents brought suit on behalf of all other similarly situated students, alleging that county and county health department failed to properly and timely identify or evaluate children; limited the amount, duration, and availability of services; and failed to provide services required by plaintiffs' IEPs). Although Plaintiffs repeatedly assert that unnamed students in the S.H.O.W. program are detrimentally affected by the District's alleged systemic violations of the IDEA, "the mere fact that certain allegations . . . assert that the rights of 'other similarly situated special needs students' were also violated does not automatically turn utilization of the administrative hearing process into an act of futility." Intravaia v. Rocky Pt. Union Free Sch. Dist., 919 F. Supp.2d 285, 295 (E.D.N.Y. 2013).

Finally, the Court notes that there is another basis for "futility" that arises when an educational agency "failed to implement services that were specified or otherwise clearly stated in an IEP," Polera, 288 F.3d at 489. Although Plaintiffs have not raised such an argument, the Court, in the interest of completeness, has considered whether they meet the criteria for this "narrow[,]" Polera, 288 F.3d at 489 (additional citation

omitted), category of administrative futility. Courts have consistently noted that "failure to implement" claims are defined narrowly because, otherwise, "plaintiffs could defeat the purposes of the exhaustion requirement by reframing complaints they have regarding the content of the program provided their child as claims regarding 'implementation.'" Piazza, 777 F. Supp.2d at 682 (citing Polera, 288 F.3d at 489). When evaluating claims of futility on the basis of a "failure to implement" the Second Circuit has directed courts to "closely examine" a plaintiff's claims "before concluding that they involve nothing more than 'implementation' of services already spelled out in an IEP." Polera, 288 F.3d at 489.

Here, Plaintiffs have made only generalized assertions concerning the lack of implementation. For instance, Plaintiffs allege that unnamed students in the S.H.O.W. program have been issued IEPs "which guarantee academic instruction" but such "instruction has not been provided"; hence, "the District has failed to implement the IEPs[.]" Compl. ¶¶ 9, 10. Plaintiffs also allege that O.M. has been issued an IEP which has not been implemented. Id. ¶ 13. However, even assuming that such allegations plausibly alleged a failure to implement, Plaintiffs allege elsewhere in the complaint that in O.M.'s IEP developed for the 2014-2015 school year, the "transition goals and services" were "vague and not tailored to his individualized needs[.]" Id. ¶ 46. Therefore, the Court cannot find that Plaintiffs have met their burden of demonstrating that their claims involve *only* a failure to

implement services set forth in IEPs. See, e.g., Polera, 288 F.3d at 489 (declining to find futility based on a failure to implement because the plaintiff's "claim unavoidably encompasses both a failure to provide services and a significant underlying failure to specify what services were to be provided"). The Court therefore cannot excuse exhaustion on this basis.

**V.   Conclusion**

For the reasons discussed above, the Court grants Defendant's motion to dismiss (Dkt #10) the complaint for lack of subject matter jurisdiction based on Plaintiffs' unexcused failure to exhaust their administrative remedies. The complaint (Dkt #1) is dismissed. The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         June 29, 2015